IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-07-00105-CR

 

Brunshae Steadman,

                                                                                    Appellant

 v.

 

The State of Texas,

                                                                                    Appellee

 

 

 



From the 52nd District
Court

Coryell County, Texas

Trial Court No. 18,512

 



Opinion on remand



 








            On original submission, the
Court, with Chief Justice Gray dissenting, reversed Brunshea Steadman’s conviction
for aggravated assault due to factual insufficiency.  See Steadman v. State, 262 S.W.3d 401 (Tex. App.—Waco
2008, pet. granted).  The
Court of Criminal Appeals reversed and remanded, holding that we “failed in
several respects to conduct a proper factual sufficiency review.”  See Steadman v. State, 280 S.W.3d 242, 250 (Tex. Crim.
App. 2009).  The sole issue on remand is whether the evidence is factually
sufficient to support Steadman’s conviction for aggravated assault by his
sexual organ.  We affirm.

STANDARD OF REVIEW

            Under factual sufficiency
review, we ask whether a neutral review of all the evidence demonstrates that
the proof of guilt is so weak or that conflicting evidence is so strong as
to render the jury’s verdict clearly wrong and manifestly unjust.  Watson v. State, 204 S.W.3d 404, 414-15 (Tex.
Crim. App. 2006); Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000).  We review the evidence weighed by the jury that tends
to prove the existence of the elemental fact in dispute and compare it with the
evidence that tends to disprove that fact.  Johnson, 23 S.W.3d at 7.  We
do not indulge in inferences or confine our view to evidence favoring one
side.  Rather, we look at all the evidence on both sides and then make a
predominantly intuitive judgment.  Id.

ANALYSIS

The State may prove penetration by
circumstantial evidence.  See Villalon v. State, 791 S.W.2d 130, 133 (Tex. Crim.
App. 1990).  The State need not establish actual penetration of the
vaginal opening in order to establish aggravated sexual assault by a
defendant’s sexual organ:

[M]ere contact with the outside of an
object does not amount to a penetration of it.  But pushing aside and reaching
beneath a natural fold of skin into an area of the body not usually exposed to
view, even in nakedness, is a significant intrusion beyond mere external
contact.  

 

Vernon v. State, 841 S.W.2d 407, 409 (Tex. Crim.
App. 1992).  Evidence of the slightest penetration is sufficient to
uphold a conviction, so long as it has been shown beyond a reasonable doubt.  See
Luna v. State, 515 S.W.2d 271, 273 (Tex. Crim.
App. 1974).

L.N. told her grandmother that Steadman
“laid down on top of me and played with me,” touched her “tutu,” meaning her
vaginal area, and touched her with his penis “[d]own in her stride,” also
meaning her vaginal area.  L.N. was suffering from a green discharge and had
previously complained of her “tutu” hurting and bleeding.  

Nurse Annette Wendeborn testified that greenish
discharge in a child L.N.’s age is uncommon and suggests a sexually transmitted
disease.  She opined that the infection was caused by some kind of sexual
contact.  Dr. Barry Phillips testified that L.N.’s exam revealed a green watery
discharge, “mild reddish irritation,” and no “evidence of trauma.”  He does not
“routinely” see discharge from a child who has never had a menstrual cycle or
sexual intercourse.  L.N. could have had any number of bacterial infections and
the irritation could have been caused by using the restroom, bathing, scratching,
or wearing old underwear.  L.N. tested positive for gonorrhea.

Steadman tested positive for both
gonorrhea and chlamydia.  He told Deputy Armando Paniagua that he touched L.N.
by rubbing her sexual organ with his finger and penetrated her with his finger
under her clothing.  In his statement, Steadman wrote, “I was playing with my
self and got cum on my finger, I was drunk at the time I touch [L.N.] with my
hand, I never did do anything other than that.”  He used gestures to show
Paniagua what he did to L.N.  After writing his statement, Steadman denied
doing anything to L.N. and stopped the interview.

L.N. told sexual assault nurse examiner
Deborah Kleypas that Steadman put his penis on her bottom, “tutu,” and “pee
pee.”  During L.N.’s exam, Kleypas and Dr. Pamela Greene observed v-shaped
notches in L.N.’s hymen and posterior fourchette.  Kleypas testified that these
findings are not “definitive proof of sexual abuse,” but could have resulted
from abuse and were consistent with the abuse that L.N. described. 

Kleypass testified that anything passing
beyond the labia majora constitutes penetration of the female sexual organ, such
as “rubbing up and down;” “it doesn’t necessarily have to go in the vagina to
be penetration.”  Kleypas and Greene explained that penetration of a child’s
sexual organ by the male sexual organ is difficult.  Greene explained that a
child’s vaginal opening is so tiny that the male penis could not enter without
“ripping it from the vagina all the way to the rectum.”  Kleypas testified that
in probably ninety percent of sexually abused children, “something has passed
the labia majora.”  The percentage is much less with regard to the frequency of
vaginal penetration.  Eighty-five to ninety percent of the time there is no
injury to the labia majora or labia minora.  Greene testified that seventy-five
percent of exams are normal.

Greene and Kleypas testified that gonorrhea
is transmitted by genital to genital contact or mucus membrane to mucus
membrane.  Kleypas explained that any discharge from the penis that contacts
the mucus membranes past the labia majora is sufficient to transmit the
infection.  Greene testified that the infection can be transmitted by rubbing
on the labia minora or contacting the child’s genitals.  Dr. Robert Fader
testified that gonorrhea can be transmitted to a child by rubbing between the
labia majora.  He explained that, unlike an adult female, a child’s entire
genital urinary tract is susceptible to infection because of differences in the
inner tissue of the female sexual organ.  He, Greene, and Kleypas explained
that, unlike adults, children usually show symptoms of the infection.  Greene
further explained that a person may have both chlamydia and gonorrhea, but
transmit only one infection.

Greene testified that it may be possible
to transmit gonorrhea by rubbing the child’s genitals with a finger on which
semen is present, but would probably have to be a “large inoculum.”  She stated
that gonorrhea has not been found to be transmittable by object, such as a
towel, but one study found that it was transmitted to a child who swallowed an agar
medium on which the infection was growing.  Fader testified that the infection
cannot live outside the body very long; thus, transmission by finger is
possible, but the sample would need to be in a moist state when transferred.  He
testified that catching the infection by sitting on a toilet is a remote
possibility.

L.N.’s mother admitted having gonorrhea
while pregnant with L.N.  Greene testified that a baby could contract gonorrhea
during child birth, but the infection would develop in the child’s eyes and
would develop within a few weeks of delivery.  Fader testified that it is highly
unlikely that gonorrhea could be contracted at birth and develop four years
later.  Kleypas, Greene, and L.N.’s primary care physician Dr. Darren Hamm each
testified that gonorrhea in a child is indicative of sexual abuse. 
Specifically, Greene testified that gonorrhea in a four-year-old child means
sexual abuse.

As the Court of Criminal Appeals noted
in Steadman, Vernon accepted the State’s position that “tactile contact beneath
the fold of complainant’s external genitalia amounts to penetration within the
meaning of the Aggravated Sexual Assault statute, since vaginal penetration is
not required, but only penetration of the ‘female sexual organ.’”  Vernon, 841 S.W.2d at 409; Steadman, 280 S.W.3d at
247-48.  In this case, L.N. accused Steadman of touching her female sexual
organ, L.N. suffered from a sexually transmitted disease from which Steadman
also suffered, and medical testimony established that penetration constitutes anything
passing beyond the labia majora and that gonorrhea may be transmitted by this
means without penetrating the vaginal opening.  Viewing the evidence in a
neutral light, a reasonable
jury could conclude that the contact between Steadman’s sexual organ and L.N.’s
sexual organ was “more intrusive than contact with her outer vaginal lips.”  Vernon, 841 S.W.2d at 409.  The proof of guilt is not so weak nor the
conflicting evidence so strong as to render the jury’s verdict clearly wrong or
manifestly unjust.  See Watson, 204 S.W.3d at 414-15; see
also Johnson, 23 S.W.3d at 11. 
Because the evidence is factually sufficient to support Steadman’s conviction,
we overrule his sole issue on remand and affirm the judgment.

 

 

FELIPE REYNA

Justice

Before Chief
Justice Gray,

Justice
Reyna, and

Justice
Davis

Affirmed

Opinion
delivered and filed December 16, 2009

Do not publish

[CRPM]